***********
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, with modifications, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as: *Page 2 
 STIPULATIONS
1. The parties are properly before the North Carolina Industrial Commission, and the North Carolina Industrial Commission has jurisdiction of the parties and of the subject matter of these proceedings.
2. The parties are correctly designated, and there is no question as to the mis-joinder or the non-joinder of any party.
3. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all times relevant to these proceedings.
4. An employment relationship existed between the parties, and Defendant-Carrier was the carrier on the risk on or about February 3, 2007.
5. Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course and scope of her employment with Defendant-Employer on or about February 3, 2007 to her left leg.
6. Plaintiff's average weekly wage will be determined pursuant to a properly completed Form 22 submitted by Defendants, or that of a similarly situated employee, if necessary. The parties reserve the right to stipulate to Plaintiff's average weekly wage any time prior to a determination of this being made by the North Carolina Industrial Commission.
7. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One (1) — Pre-trial Agreement;
 b. Stipulated Exhibit Two (2) — North Carolina Industrial Commission forms and filings, Plaintiff's medical records, and Plaintiff's out-of-work notes from her treating physicians. *Page 3 
 *********** ISSUES
The issues to be determined are:
1. Whether Plaintiff sustained a compensable injury by accident or specific traumatic incident on February 3, 2007?
2. Whether Plaintiff remains disabled since her injury on February 3, 2007?
3. Whether and to what compensation is Plaintiff entitled?
 ***********
Based upon the competent and credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 58 years old, with a date of birth of December 21, 1950. Plaintiff began her employment with Defendant-Employer in February 2004 in their Asheboro, North Carolina facility as a machine operator. Defendant-Employer is in the business of molding plastic products such as tampons, mailboxes, clothes hangers, lids, etc.
2. On February 3, 2007, Plaintiff was operating the lid machine, otherwise known as machine number seven (7), and the tampon machine, otherwise known as machine number five (5) simultaneously. Plaintiff's normal job was to operate machine number five (5), but a shortage of staff on the day in question required her to operate both machines. Prior to February 3, 2007, no other employee at Defendant-Employer's facility in Asheboro ever operated both of these machines at the same time. While in the process of operating both of these machines, Plaintiff was carrying a box of lids from machine number seven (7) to a conveyor belt. As Plaintiff was carrying this box of lids, she hit her left leg just above the knee on a steel conveyor *Page 4 
belt. Plaintiff then dropped the box of lids, bent over, and grabbed her left leg due to the pain she began to experience.
3. On February 18, 2007, Plaintiff initially sought medical treatment for her February 3, 2007 work injury at White Oak Urgent Care, at which time she reported experiencing pain in her left leg, hip, foot, and buttocks. An x-ray taken that day of Plaintiff's lumbar spine revealed a "spondylitic L5-S1" level of the spine. Dr. Lawrence Edward Perry, a family medicine and sports medicine physician, diagnosed Plaintiff with lower back pain and sciatica, prescribed Prednisone and Vicodin, and wrote her out of work for one (1) week.
4. On February 20, 2007, Plaintiff presented to Dr. John Larry Simpson, a family medicine and occupational medicine physician, at which time she reported a history of left calf, leg, thigh, buttock, and back pain which was resolving. Physical examination revealed that Plaintiff's medial thigh was still sore to the touch with flexion. Dr. Simpson diagnosed Plaintiff with a contusion to her left thigh, prescribed medications, and released her to light-duty work for the next two (2) days with limited walking, standing, lifting, and bending, followed by a return to her regular work duties without restrictions on February 26, 2007.
5. On March 14, 2007, Plaintiff returned to Dr. Simpson and reported experiencing severe left leg and calf pain that began the previous day. Plaintiff's straight-leg raise tests were positive in both the supine and sitting positions, which Dr. Simpson noted was consistent with a "suggestion of radiculopathy." Dr. Simpson diagnosed Plaintiff with left calf pain of unclear etiology, could not rule out the possibility of radiculopathy, and took her out of work for the rest of the week.
6. On March 19, 2007, Plaintiff again returned to Dr. Simpson and reported continuing left calf pain with some improvement since her last evaluation. Straight-leg raise *Page 5 
testing was negative, but 90 degrees of left hip flexion and full extension of the knee produced slight discomfort along the lateral aspect of the left calf suggestive of slight radiculopathy. Dr. Simpson concluded that Plaintiff could return to work performing her regular duties, continued Plaintiff on Prednisone and Darvocet, and indicated that if her previous symptoms returned, magnetic resonance imaging (MRI) may be necessary in order to confirm whether she actually had radiculopathy.
7. On March 23, 2007, Plaintiff complained to Dr. Simpson that standing and walking over a 12 hour shift at work made her pain "quite miserable," "intense," and "sharp" in her left leg and calf. Plaintiff also complained of left thigh pain to a lesser degree, and movement of her back such as flexion and extension increasing her pain symptoms. Physical examination of Plaintiff revealed a positive straight-leg raise test. Dr. Simpson ordered a lumbar MRI and assigned light-duty work with restrictions of no prolonged standing or sitting. The following week, Dr. Simpson took Plaintiff completely out of work due to increased pain until after the lumbar MRI could be obtained, and switched her pain medication to Hydrocodone.
8. On April 4, 2007, Plaintiff underwent a lumbar MRI, which revealed a left lateral disc protrusion at the L5-S1 level of the spine with moderate to severe left neural foraminal narrowing and a broad-based component of the disc bulge at the L5-S1 level contacting both S1 nerve roots, an eccentric right disc bulge at the L4-L5 level of the spine with moderate right and mild left neural foraminal narrowing, as well as mild narrowing of the right lateral recess, and mild disc bulges at the L2-L3 and L3-L4 levels of the spine without significant stenosis. Dr. Simpson saw Plaintiff the next day in order to review the lumbar MRI results with her, at which time she continued to complain of severe pain in her left leg and calf at all times, but especially when bearing weight on it. As a result of the lumbar MRI findings, Dr. Simpson referred *Page 6 
Plaintiff for a neurosurgical consultation, ordered that she remain out of work until she received the neurosurgical consultation, and continued her on Prednisone and Hydrocodone.
9. On May 8, 2007, Plaintiff saw Dr. David Scott Jones, a neurosurgeon. Dr. Jones recommended either a nerve root block injection or surgery in order to treat the disc herniations found on Plaintiff's lumbar MRI, and Plaintiff and Dr. Jones ultimately agreed upon surgery as the best treatment option. Defendants did not authorize this recommended treatment.
10. On May 25, 2007, in response to written questions from a letter sent to him by Dr. Arthur I. Broder, a physician retained by Defendants to review Plaintiff's medical records, Dr. Jones sent a reply stating, that it "is possible to explain a cause of relationship between the incident on February 3, 2007 and the lumbar disc herniation, but it is certainly difficult to determine the probability of such a relationship." Dr. Jones went on to note that "[c]ertainly, her pain is temporally related to the [February 3, 2007 work] incident." Dr. Jones made these statements after seeing Plaintiff only once, and without having the benefit of reviewing Plaintiff's pertinent medical records and history following her February 3, 2007 work injury.
11. On December 21, 2007, Dr. Jones noted that as of that date, Plaintiff was on Medicaid and therefore, the surgery that he recommended could proceed. On January 16, 2008, Plaintiff underwent surgery at the L4-L5 and L5-S1 levels of the spine, performed by Dr. Jones. Dr. Jones kept Plaintiff completely out of work while she recovered from the surgery, and noted improvement in Plaintiff's condition throughout the course of her post-operative visits.
12. On April 22, 2008, Dr. Jones again noted steady improvement in Plaintiff's condition, with "[n]o real numbness, tingling, or weakness," and normal ambulation without a limp. Dr. Jones requested that Plaintiff follow up with him in three (3) months, and opined that *Page 7 
"[a]t that point, I think she will have reached MMI." There are no further medical records from Dr. Jones after this April 22, 2008 visit.
13. At his deposition, Dr. Simpson testified that he "felt that she [Plaintiff] had a back problem, and that she had a herniated disk." However, because Plaintiff never gave him a history of injuring her back, he opined that Plaintiff's back condition was unrelated to her February 3, 2007 work injury. Rather, Dr. Simpson felt that Plaintiff's herniated disc could have just as easily been related to other factors such as her age and degenerative disc disease.
13. At his deposition, when asked to assume that Plaintiff's testimony that she bent over and grabbed her left leg/thigh immediately after she hit it on the steel conveyor belt was true and accurate, Dr. Jones opined that Plaintiff's February 3, 2007 work injury was the "probable cause" for the disc herniations that he diagnosed and treated. Dr. Jones agreed that his causation opinion changed to the extent that he now used the work "probable" rather than "possible." However, Dr. Jones did not think that this changed the "spirit of my opinion."
14. Dr. Jones elaborated on the basis of his causation opinions by explaining that he thought that it was reasonable to expect that Plaintiff, like most people, would instinctively reach over to grab her left leg/thigh after striking it with enough force to cause the significant bruising and other injury to her left thigh that she experienced. Further, Dr. Jones did not think that it was unreasonable that Plaintiff never mentioned to Dr. Simpson a history of injuring her back at work, since she actually struck her thigh at work, and may not have attributed her radicular pain to her back as a "nonmedically trained individual." Dr. Jones was of the opinion that the act of bending or twisting in order to grab her left leg/thigh in response to striking it would be enough to cause a herniated disc in Plaintiff's lumbar spine. Dr. Jones relied upon the fact that Plaintiff did not have left lower extremity pain prior to the February 3, 2007 work injury, and that having *Page 8 
it occur a week or even more after the work injury "can be very consistent with a disk herniation." Thus, Dr. Jones concluded that both Plaintiff's reaction of grabbing her left leg/thigh after hitting it and the temporal proximity of her onset of symptoms to the February 3, 2007 work injury, along with the absence of such symptoms prior to the work injury, "seems to push [his opinion] over to probable" rather than "possible" regarding the causation of the disc herniations he treated.
15. The Full Commission gives greater weight to the opinion testimony of Dr. Jones over any contrary opinions of Dr. Simpson with respect to the causal relationship of Plaintiff's February 3, 2007 work injury to the disc herniations seen on her April 4, 2007 MRI and subsequently treated by Dr. Jones. Dr. Simpson, whose practice focuses on treating patients of all ages with a variety of general medical complaints, does not specialize in the treatment of spinal or back injuries. Dr. Jones, however, almost exclusively treats and operates on patients with spinal injuries and diseases.
16. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's back condition and related surgery were the direct and natural result of and causally related to her February 3, 2007 work injury.
17. Dr. Simpson took Plaintiff completely out of work on March 29, 2007 until her initial neurosurgical evaluation with Dr. Jones on May 8, 2007, and Dr. Jones continued to keep her out of work from that date through the present.
18. The Full Commission finds, based upon the greater weight of the evidence, that as a result of Plaintiff's February 3, 2007 work injury and causally related back condition which required surgery, she was medically disabled and unable to earn wages in any employment for the period of March 29, 2007 through the present and continuing. *Page 9 
19. Plaintiff's average weekly wage at all times relevant to these proceedings was $471.28, yielding a compensation rate of $314.20. Deputy Commissioner Houser recited this average weekly wage as a stipulation in his Opinion and Award and neither party assigned error to this stipulation. The Full Commission did not find such a stipulation in the record, but the parties did discuss at the hearing before the Deputy Commissioner that a corrected Form 22 Wage Chart would be submitted and the parties also reserved the right to stipulate to an average weekly wage in the Pre-trial Agreement.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of her employment with Defendant-Employer on February 3, 2007 to her left leg and lower back. N.C. Gen. Stat. § 97-2(6) (2008).
2. Plaintiff's average weekly wage at all times relevant to these proceedings was $471.28, yielding a compensation rate of $314.20.
3. Dr. David Scott Jones's opinions on medical causation, which the Full Commission has found as fact herein, are sufficient to establish that Plaintiff's February 3, 2007 work injury was the probable cause of the disc herniations found on her April 4, 2007 lumbar MRI. The opinion testimony of Dr. Jones satisfies the requirements of Holley v. ACTS,Inc., which sets forth the minimum standards required for the admission of medical causation testimony in workers' compensation cases, including the requirement that the testimony be "more likely than not," andYoung v. Hickory Business Furniture, which requires that an expert *Page 10 
opinion be based on more than mere speculation and conjecture.Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003); Young v.Hickory Business Furniture, 353 N.C. 227, 538 S.E.2d 912 (2000).
4. Plaintiff's lower back condition and related surgery were the direct and natural result of and causally related to her February 3, 2007 work injury by accident. Roper v. J.P. Stevens Co.,65 N.C. App. 69, 74, 308 S.E.2d 485, 488 (1983), cert. denied, 310 N.C. 309,312 S.E.2d 652 (1984); Starr v. Paper Co., 8 N.C. App. 604, 611,175 S.E.2d 342, 347, cert. denied, 277 N.C. 112 (1970).
5. The Full Commission finds, based upon the greater weight of the evidence, that as a result of Plaintiff's February 3, 2007 work injury, including her causally related back injury, which required surgery, she was medically disabled and unable to earn wages in any employment for the period of March 29, 2007 through the present and continuing.Russell v. Lowes Production Distribution, 108 N.C. App. 762,425 S.E.2d 454 (1993).
6. As a result of Plaintiff's February 3, 2007 work injury, she is temporarily and totally disabled from working and is entitled to indemnity compensation at the rate of $314.20 per week from March 29, 2007 through the present and continuing until further Order of the North Carolina Industrial Commission. N.C. Gen. Stat. § 97-29 (2008).
7. Plaintiff is not at maximum medical improvement with respect to her February 3, 2007 injury to her lower back, and she requires further medical evaluations, testing, and treatment, and any other reasonably required treatment and/or diagnostic testing ordered by Dr. Jones, in order to effect a cure, to give relief, and/or to lessen her period of disability. N.C. Gen. Stat. §§ 97-25; 97-25.1 (2008).
 *********** *Page 11 
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendants shall pay temporary total disability compensation to Plaintiff at the rate of $314.20 per week for the period from March 29, 2007 through the present and continuing, until further Order of the North Carolina Industrial Commission. The accrued compensation shall be paid in a lump sum.
2. Defendants shall pay all medical expenses incurred or to be incurred as a result of Plaintiff's February 3, 2007 work injury, including expenses associated with the treatment provided by Dr. John Larry Simpson and Dr. David Scott Jones, for so long as such evaluations, examinations, and treatments may reasonably be required to effect a cure, to give relief, and/or to lessen her period of disability, in accordance with the provisions of the North Carolina Workers' Compensation Act.
3. A reasonable attorney's fee of 25 percent is hereby approved for Plaintiff's counsel from the sums due Plaintiff under paragraph one (1), above. Defendants shall deduct and pay directly to Plaintiff's counsel 25 percent of any accrued compensation owed to Plaintiff and thereafter, every fourth (4th) check from future compensation due Plaintiff.
4. Defendants shall pay the costs of these proceedings.
This the __ day of May 2009.
S/___________________ BERNADINE S. BALLANCE COMMISSIONER *Page 12 
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1